PITCHER v. DERVAGE, *Superintendent of Public Instruction, et al.*

No. 6741.   Opinion Filed March 14, 1916.

(156 Pac. 218.)

**SCHOOLS AND SCHOOL DISTRICTS—Vote to Consolidate Districts —Method of Voting—"Election."**   A vote on the proposition to unite different rural school districts into a consolidated school district, under chapter 219, art. 7, of the Acts of the 1913 Legislature (Session Laws 1913, p. 534), by the voters duly assembled at a meeting for the purpose, in conformity with said law, need not be by ballot and under the regulations and requirements of the general election laws, but may be taken and registered by a standing vote and count.

(a) Such an expression of the will of the assembled voters is not an "election" within the purview of article 3, sec. 6, of the state Constitution, which requires a vote by ballot.

(Syllabus by Brewer, C.)

*Error from District Court, Grant County;*
*W. M. Bowles, Judge.*

Action by Charles Pitcher against Lew Dervage, Superintendent of Public Instruction of Grant County, Okla., and others.   Judgment for defendants, and plaintiff brings error.   Affirmed.

*J. B. Drennan,* for plaintiff in error.

*Garber & Kruse* and *H. Breeden,* for defendants in error.

Opinion by BREWER, C.  Charles Pitcher, the plaintiff in error, brought this suit, as plaintiff below, for the purpose of obtaining an injunction to prevent, and later by an amendment to the petition to dissolve, the organization of school districts Nos. 67, 79, 80, and 81 into a "con-

solidated school district." The said plaintiff alleged that he was a qualified elector of one of the districts affected by the consolidation. At a hearing the petitioner was denied any relief, the court holding that the consolidated school district had been formed and established in compliance with the law. The consolidation was accomplished under an act of the 1913 Legislature, and is found at page 534 of the Session Laws of 1913, and, in so far as it is necessary to refer to the same, is as follows:

"A meeting of the voters of any two or more adjacent school districts, or parts of districts or territory, may be called for the purpose of voting on the proposition of uniting with the other adjacent districts, for the purpose of establishing a consolidated school, said call to be made by the county superintendent of public instruction, upon petition signed by one-half of the legal voters residing in each district of the territory proposed to be included in the consolidated district. The meeting shall be held at some convenient point to be named by such county superintendent. Notices of said special meeting shall be posted in at least five public places in each of the districts, or parts of districts, proposed to be consolidated, and also by publication, for at least two consecutive weeks in a weekly paper, if same be published in the school district, and in addition thereto, notices of said special meeting shall be mailed by such county superintendent to each voter residing in the districts proposed to be consolidated. The meeting shall have authority to elect a chairman and secretary. If a majority of the votes cast at said special meeting shall be in favor of such consolidation, they shall then proceed to elect a director, clerk and member of such consolidated district, and the clerk of said special meeting shall thereupon make a written report of such action to the county superintendent of public instruction of the county in which the said districts are located. No consolidated district shall be formed containing an area of less than twenty-

five square miles and an assessed valuation of less than three hundred thousand dollars; provided, that all or a part of any district adjacent to a consolidated district shall be attached to and become a part of such consolidated district upon petition to the county superintendent signed by a majority of the legal voters of such territory desiring to be attached and by the board of directors of such consolidated district."

There is no complaint made that any of the legal voters of the four school districts involved were not properly notified of the time and place of the meeting at which this action was had, and of all the purposes of such meeting; nor is it denied that all parties at the meeting had a legal right to vote, as well as an opportunity to do so, and that every vote was counted as cast; nor is it denied that at the meeting the question of consolidation was carried by the very significant vote of 210 in favor to 44 against the same.

It seems, from an examination of the briefs, that most of the numerous allegations as to irregularities, *et cetera*, in the petition of plaintiff, have been abandoned, and that the proposition has been narrowed down to one claim, namely, that the consolidation is irregular and must be stricken down because the vote taken to accomplish the same was not by ballot; the contention being made that this is such an election as is contemplated by section 6, art. 3, of the Constitution, which provides:

"In all elections by the people the vote shall be by ballot and the Legislature shall provide the kind of ticket or ballot to be used and make all such  *  *  *  regulations as may be necessary to detect and punish fraud."

We do not believe that the law providing for consolidating school districts, as set out above, calls for such

an election as is contemplated by the above provision of the Constitution. We rather think that it was contemplated that this matter should be decided at a school meeting, the time and place and purposes of which the required notices had been given; and at which meeting the business would be transacted, and the will of the people manifested, in the way usually adopted in the annual school meetings of the rural school districts of this state. The above law provides that, when the voters have assembled, they shall elect a chairman and a secretary, and seems to clearly indicate that whatever business is to come before the people is to be transacted as such matters usually are, by motion, second, discussion, and by vote taken in such manner as those assembled may be satisfied with; just so that it is free from fraud, and is not participated in by other than those entitled, and that it may accurately and truly express the will of the majority there assembled. If this is not true, the legislative branch of our government, in failing to provide for formal ballot elections at the annual school meetings to be held in rural districts, has either been negligent of, or under a misapprehension of, its duties.

The case of *W. H. Seman v. Alonzo Baughman*, 82 Iowa, 216, 47 N. W. 1091, 11 L. R. A. 354, seems to be directly in point under a similar constitutional provision, and from that case we quote the following; the first and third paragraphs of the syllabus being:

"1. Votes may be given by ballot or *viva voce* or in any recognized manner, in the absence of a requirement to the contrary."

"3. A constitutional provision that 'all elections by the people shall be by ballot' does not apply to voting by

the electors of a district township at an annual meeting for a tax for the construction of a schoolhouse."

We quote the following from the body of the opinion in the above case:

"The word 'vote' is used only in connection with the provision in regard to a tax, but it is manifest that the usual and necessary method of exercising the powers specified is by voting. The elector in some manner makes known his wishes in regard to pending measures, in order that he may be counted for or against them. He thus votes, whether his wishes are expressed verbally, by ballot, or by other means. Usually votes are given by ballot or *viva voce;* but it is sufficient, in the absence of a requirement to the contrary, to give them in any recognized manner. Therefore the fact that the word 'vote' is used in connection with the provision for a tax is not entitled to any special significance. There is nothing in the statute which in terms directs the method of taking the vote."

And also:

"It is said that the Constitution of Iowa requires that votes like that in controversy be by ballot. Section 6 of article 2 of that Constitution is as follows: 'Sec. 6. All elections by the people shall be by ballot.' The word 'election,' in its broadest sense, signifies a choice; the act of choosing; the act of selecting one or more from others; but in the sense in which it is used in the Constitution it means a choice of persons for public offices, made by the people. Bouvier, Law Dict. title Election; 6 Am. & Eng. Encyc. Law, 260; *Police Com'rs v. Louisville,* 3 Bush [Ky.] 602. Moreover, there is nothing in the statute which authorizes the conclusion that the meetings of the district townships are designed to be 'elections' within the meaning of the popular use of that term. Judges of election are not provided for, as they are for the meetings of subdistricts and independent districts; but the meeting contemplated seems to be more in the nature of a delib-

erative assembly, which may debate and dispose of measures before it as they are reached in a summary manner, if it is deemed best so to do."

The plaintiff in error having failed to cite any authorities directly sustaining his contentions, we shall not make an independent investigation for other authorities than that mentioned above.

The case should be affirmed.

By the Court: It is so ordered.